IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARY G. T., § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CIVIL CASE NO. 3:20-CV-1948-BK |
| § | |
| COMMISSIONER, SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
|     DEFENDANT. § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff seeks judicial review of the Commissioner's final decision denying his claim for disability insurance benefits under the Social Security Act (the "Act"). He seeks benefits retroactive to his amended onset date of September 2014, through March 31, 2016, when his insured status under the Act expired. Doc. 22-1 at 14, 37-38. Pursuant to the parties' consent to proceed before the undersigned magistrate judge, Doc. 32, the Court now considers the parties' cross-motions for summary judgment. Doc. 27; Doc. 30. For the reasons stated here, *Plaintiff's Motion for Summary Judgment* is **GRANTED**, *Defendant's Motion for Summary Judgment* is **DENIED**, and this case is **REVERSED** and **REMANDED** for further proceedings.

**I.     BACKGROUND**

Plaintiff was 45 years old on his disability onset date and had a high school education. Doc. 22-1 at 153. He also had past relevant work history as a sales manager and collections clerk. Doc. 22-1 at 62-64. In terms of his relevant medical history, the evidence begins with a four-day stay at the Mayo Clinic in September 2014, during which Plaintiff received various treatments and was discharged in stable condition with diagnoses of "new onset systolic congestive heart failure, right-sided pulmonary embolism, duodenal ulcer, atrial flutter with rapid

ventricular response, iron deficiency anemia, hypertension, diabetes mellitus type 2, alcohol abuse, mild hepatocellular transaminitis, [and] likely sleep apnea." Doc. 22-1 at 285-87 (Hospital Discharge Summary). Plaintiff returned a few days later complaining his condition had declined, Doc. 22-1 at 251-52 (Hospital Admission Final Report), and was discharged after treatment led to some improvement, Doc. 22-1 at 259 (Hospital Discharge Summary). Subsequently, Plaintiff visited numerous medical professionals for his complaints regarding his cardiac health and gout.

In January 2015, Dr. Majdi Ashchi, D.O., assessed Plaintiff's condition to include cardiomyopathy, coronary artery disease, obesity, mitral regurgitation, angina, and hypertension. Doc. 22-1 at 558-59. Later that month, Dr. Nathan R. Bates, M.D., recommended open heart surgery, which he performed in February 2015. Doc. 22-1 at 493-95 (Operative Report); Doc. 22-1 at 532 (Recommendation). In late February, Dr. Richard A. Delacruz, M.D., prescribed numerous medications for Plaintiff's chest pain and other concerns. Doc. 22-1 at 448-49. During the relevant period, Dr. Frederic Porcase, D.O., also treated Plaintiff for gout. Doc. 22-1 at 605, 609-10.

In September 2015, Plaintiff began seeing Dr. Robert Luke, M.D., for cardiac care. Doc. 22-1 at 663-68. Dr. Luke's diagnoses of Plaintiff included essential hypertension, abnormal electrocardiogram, atypical chest pain, congestive heart failure, cardiomyopathy, hyperlipidemia, and obesity. Doc. 22-1 at 666-67. Dr. Luke found Plaintiff to be "relatively stable," but noted he had "a host of potentially life[-]debilitating and life[-]threatening medical issues." Doc. 22-1 at 667. In a follow-up appointment with Dr. Luke, Plaintiff reported he was feeling better, Doc. 22-1 at 662, but a few months later, he again reported chest pain, Doc. 22-1 at 659. Dr. Luke

noted Plaintiff's pain seemed consistent with musculoskeletal discomfort or a pulmonary embolus and sent Plaintiff to the emergency room. Doc. 22-1 at 660.

Notably, in the thousand pages of medical records submitted as part of the administrative record, there is no medical opinion regarding Plaintiff's ability to work. In finding Plaintiff not disabled, the ALJ gave "some weight" to the assessments of the state agency medical consultants, who indicated there was insufficient evidence to evaluate the claim. Doc. 22-1 at 20. The ALJ considered these assessments and agreed "the evidence is inadequate to establish disability prior to the date last insured." Doc. 22-1 at 20. Despite this, he rendered his RFC decision based on the available evidence, finding Plaintiff had the severe impairments of cardiomyopathy, chronic heart failure, hypertension, and obesity, but no impairment that met or equaled a Listing, Doc. 22-1 at 17-19. The ALJ also concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with a variety of exertional limitations, Doc. 22-1 at 19. Ultimately, the ALJ denied Plaintiff disability benefits under the Act. Doc. 22-1 at 20.

## II.   APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or not disabled. *Id.* If the Commissioner does not make a determination, the burden shifts to her at step five to show there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Judicial review of a denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the correct legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their citations to the supporting evidence of record. The Court is not under an obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (providing parties moving for summary judgment must support their positions by "citing to particular parts

4

of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (clarifying the courts are under no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted)).

### III.    ANALYSIS

The central issue here is whether the ALJ's RFC determination was supported by substantial evidence.  Specifically, Plaintiff argues the ALJ improperly relied on his own lay interpretation of the medical records, preventing the RFC from reflecting Plaintiff's health conditions.  Doc. 27 at 13.  Defendant avers the ALJ's decision was sufficiently supported by the medical records as a whole.  Doc. 30 at 3.

**1. The RFC determination is not supported by substantial evidence.**

In determining a claimant's RFC, an ALJ may not—without medical experts' opinions— derive the applicant's RFC solely from evidence of his claimed medical conditions.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  The ALJ also may not rely on his own unsupported opinion of the limitations the applicant's medical conditions might present.  *Id.* at 557; *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (warning an ALJ "must be careful not to succumb to the temptation to play doctor," as "lay intuitions about medical phenomena are often wrong").  Instead, the ALJ should request a "medical source statement" describing types of work the claimant is still capable of performing despite his condition.  *Ripley*, 67 F.3d at 557.  Absent such a statement, there is typically insufficient evidence to support an RFC determination.  *Id.* at 557-58 (remanding the case with instructions to obtain a report from a treating physician regarding effects of the plaintiff's condition on his ability to work).  "Medical source" is a term of art that includes treating, examining, and consultative resources.  20 C.F.R. § 404.1502.

Here, no treating, examining, or consultative resource reviewed the impact of Plaintiff's conditions on his ability to work.  Indeed, Defendant admits "the record did not contain a medical opinion of Plaintiff's RFC from an examining, treating or reviewing physician." Doc. 30 at 5.  Although Defendant is correct that the RFC is *ultimately* the ALJ's determination, Doc. 30 at 5, a *foundational* basis for that decision is not apparent here.  An ALJ cannot look to only the claimant's "history of surgery, medical examinations, and complaints of pain," and conclude the claimant can perform sedentary work.  *Ripley*, 67 F.3d at 557; *see also Turner v. Colvin*, No. 3:13-CV-1458-B, 2014 WL 4555657, at *5 (N.D. Tex. Sept. 12, 2014) (Boyle, J.) ("[E]vidence which merely describes Plaintiff's medical conditions is insufficient to support the ALJ's RFC determination.").  The conspicuous absence of credible evidentiary choices here does not substantiate an RFC determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quotation omitted).  Despite the Commissioner's protestation that the "objective medical evidence demonstrates little support for [Plaintiff's] alleged degree of functional limitation," Doc. 30 at 8, neither does the evidence establish Defendant's allegations of the degree of Plaintiff's functional limitations, *Ripley*, 67 F.3d at 557.

Here, the ALJ did not identify *any* medical opinion of Plaintiff's ability to work as the basis for the limitations the ALJ determined.  *Jim S. v. Saul*, No. 3:18-CV-2179-BH, 2019 WL 4694943, at *9 (N.D. Tex. Sept. 25, 2019) (Ramirez, J.) (citing *Browning v. Barnhart*, No. 1:01-CV-637, 2003 WL 1831112, at *7 (E.D. Tex. Feb. 27, 2003) (finding that despite the voluminous progress reports, clinical notes, and lab reports in evidence, "none [made] any explicit or implied reference to the effects these conditions h[ad] on claimant's ability to work" and the ALJ could not rely on that "raw medical evidence as substantial support for" the claimant's RFC)).  "The only evidence regarding [Plaintiff's] ability to work came from [his]

own testimony." *Ripley*, 67 F.3d at 557. This dearth of supporting evidence leads the Court to conclude the ALJ relied on his own interpretation of the medical evidence, which is prohibited. *Williams*, 355 F. App'x at 832 n.6.

### 2. The ALJ's error was not harmless.

Plaintiff argues that because "the ALJ relied upon his deficient lay evaluation of the objective medical data of record in determining [Plaintiff's] RFC and did not base his assessment of such limitations upon any medical assessment of the effect of [Plaintiff's] cardiac conditions on his ability to work," his error is not harmless as "[i]t is not inconceivable that the ALJ would have reached a different conclusion" otherwise. Doc. 27 at 20. The Court agrees.

"Procedural perfection in administrative proceedings is not required" and the court "will not vacate a judgment unless the substantial rights of a party have been affected." Prejudice occurs when, as here, procedural errors cast doubt on the existence of substantial evidence in support of the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998). Because the Commissioner failed to rely on any evidence of record in determining Plaintiff's RFC, the error was necessarily prejudicial, and remand is warranted. *Jim S.*, 2019 WL 4694943, at *10 (citation omitted); *see also Ripley*, 67 F.3d at 557-58.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED**, Defendant's motion for summary judgment is **DENIED**. The decision of the Commissioner is

7

**REVERSED**, and this case is **REMANDED** for further proceedings consistent with this Opinion.

    **SO ORDERED** on March 29, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE